# EXHIBIT D

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MASSACHUSETTS
# (WESTERN DIVISION)

| | |
|---|---|
| IN RE:<br><br>DIOMED, INC., *et. al.*,<br><br>　　　　　　　　　Debtors. | Chapter 11<br><br>Case No. 08-40749 (JBR)<br>(Jointly Administered) |

### DEBTORS' MOTION FOR AUTHORITY TO REJECT ENDOLASER LICENSE AGREEMENT PURSUANT TO SECTION 365(a) OF THE BANKRUPTCY CODE

Diomed Holdings, Inc. ("Holdings") and Diomed, Inc. ("Inc.", collectively with Holdings, the "Debtors" or the "Company"), the Debtors and debtors-in-possession, by and through their undersigned counsel files this Motion (the "Motion") pursuant to 11 U.S.C. § 365(a), for entry of an Order authorizing the Debtors to reject the License Agreement with Endolaser Associates, L.L.C. (as defined *infra*).  In support of this Motion, the Debtors respectfully represent as follows:

### JURISDICTION

1.　　　This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue of these proceedings and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory basis for the relief requested herein is section 11 U.S.C. § 365(a).

### GENERAL BACKGROUND

2.　　　On March 14, 2008 (the "Petition Date"), the Debtors each respectively filed a voluntary petition for relief under chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 et. seq. (as amended, the "Bankruptcy Code") in the United States Bankruptcy Court for

the District of Massachusetts (Western Division) (the "Bankruptcy Court"). No trustee or examiner has been appointed in these cases. The Debtors continue to operate their businesses and manage their affairs pursuant to sections 1107 and 1108 of the Bankruptcy Code.

3. Prior to the Petition Date, the Debtors acquired certain rights and interests in U.S. Patent No. 6,398,777 (the "'777 Patent") entitled "Endovascular Laser Device and Treatment of Varicose Veins." The Debtors obtained their rights and interests in the '777 Patent through two separate transactions: (i) a License Agreement by and between Diomed, Inc. and Endolaser Associates L.L.C. dated July 11, 2003, (the "License Agreeement") and (2) a Purchase Agreement by and between Diomed, Inc. and Robert Min, M.D. dated July 23, 2003 (the "Purchase Agreement").[1]

4. Pursuant to the License Agreement, Endolaser (the owner of an undivided interest in the '777 Patent)[2] granted to Diomed, Inc., among other things, the exclusive right to market and sell products subject to the '777 Patent. In exchange for this exclusive right, Endolaser received a lump sum cash payment, ten (10) quarterly cash payments, and royalties measured by a percentage of future sales of products subject to the '777 Patent. Pursuant to the Purchase Agreement, Dr. Min transferred all of his right, title and interest in the '777 Patent to the Diomed, Inc. in exchange for a lump sum cash payment plus a deferred payment measured by a percentage of future sales of products subject to the '777 Patent rights. Pursuant to both the

---

[1] The License Agreement and the Purchase Agreement are not attached to this Rejection Motion due to confidentiality provisions contained therein. The License Agreement and the Purchase Agreement have been made available to the Official Committee of Unsecured Creditors subject to confidentiality restrictions and will be provided to the Court at the hearing on the Rejection Motion

[2] The inventors named in the '777 Patent included Dr. Luis Navarro, Dr. Lester Navarro, Dr. Carlos Bone Salat, Dr. Joaquina Fructuoso Gomez and Dr. Robert J. Min. Endolaser (of which Dr. Luis Navarro is a principal) obtained its undivided interest by acquiring the rights and interests of each of these individuals in the '777 Patent, except for Dr. Min.

License Agreement and the Purchase Agreement, the Debtors currently hold the exclusive rights related to the '777 Patent.

5.  To date, during the pendency of their bankruptcy cases, it was the determination of the Debtors in the exercise of their business judgment to maintain the exclusive rights related to the '777 Patent during the pendency of the bankruptcy proceedings, while investigating any potential buyer's interest in the same.

6.  On April 9, 2008, the Debtors filed a Motion for an Order Pursuant to Sections 105, 363, 365 and 1146 of Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006 and 9014 and Massachusetts Local Bankruptcy Rule 6004-1 Approving and Authorizing (a) the Sale of Substantially All Operating Assets of the Debtors Free and Clear of Liens, Claims, Encumbrances and Other Interests, and (b) the Assumption, Assignment and Sale of Certain Executory Contracts and Unexpired Leases (the "Sale Motion") [Docket No. 149].

7.  In addition, on April 9, 2008, the Debtors also filed a Motion for Order (i) Authorizing and Scheduling Public Auction for Sale of Substantially All of the Debtors' Operating Assets Free and Clear of Any and All Liens, Claims, Encumbrances and Other Interests; (ii) Approving Procedures for Submission of Qualified Overbids; (iii) Approving Bid Protections; and (iv) Approving Form and Manner of Notice Pursuant to Fed. R. Bankr. P. 2002 (the "Bidding Procedures Motion") [Docket No. 148].  Attached to the Bidding Procedures Motion was an Asset Purchase Agreement (the "APA") by and between the Debtors and AngioDynamics, Inc ("Angio").  By way of the APA, Angio was designated as the "Stalking Horse" bidder, and afforded certain bid protections.  Pursuant to the terms of the APA and the schedules and exhibits thereto (and amendments thereto filed with the Court), the License Agreement is not being acquired by Angio.

8.     On April 18, 2008, the Court entered an order approving the Bidding Procedures Motion (the "Bidding Procedures Order") and scheduled a public auction and hearing on the Sale Motion for May 28, 2008 [Docket No. 189]. Endolaser filed an objection (the "Objection") to the sale of substantially all of the Debtors' assets to Angio on May 23, 2008 (Docket No. 269). The crux of Endolaser's argument is that section 3.2(k) of the APA acts as a *de facto* assumption and assignment of the benefits of the License Agreement to Angio, without any of the burdens associated therewith (including any cure payments due Endolaser in accordance with § 365 of the Bankruptcy Code).

9.     On May 28, 2008, the Court held a hearing on the Sale Motion (the "Sale Hearing").[3] At the Sale Hearing, Endolaser appeared and reiterated the arguments made in their Objection. The Court, *inter alia*, received this argument, along with a proffer of evidence by Debtors' counsel and testimony from the Debtors' CEO and CFO. Following such argument, the Court adjourned the Sale Hearing until June 2, 2008, and instructed the Debtors and other parties in interest to attempt to resolve Endolaser's concerns on a consensual basis. In the intervening period, the Debtors and Endolaser exchanged counter-proposals, but were unable to reach resolution.

**RELIEF REQUESTED**

10.    By this Motion, the Debtors seek an Order authorizing the rejection of the License Agreement, pursuant to § 365 of the Bankruptcy Code.

11.    Section 365(a) of the Bankruptcy Code provides that a debtor-in-possession "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). The ability to assume or reject an executory contract is "one

4

of the basic reorganizational tools available to debtors under the Bankruptcy Code." Eagle Ins. Co. v. BankVest Capital Corp. (In re BankVest Capital Corp.), 360 F.2d 291, 296 (1st Cir. 2004); NLRB v. Bildisco & Bildisco, 465 U.S. 513, 528, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984) ("The authority to reject an executory contract is vital to the basic purpose [of] a Chapter 11 reorganization, because [it] can release the debtor's estate from burdensome obligations that can impede as successful reorganization."). An executory contract is one in which the obligation of both the bankrupt and the other party are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance by the other. See In re Snowcrest Development Group, Inc., 200 B.R. 473, 477 (Bankr. D. Mass. 1996), *citing* Countryman, Executory Contracts in Bankruptcy: Part I, 57 Minn.L.Rev. 439, 450-62 (1973). A debtor can move to assume or reject an executory contract at any time before the confirmation of a plan. 11 U.S.C. § 365(d)(2).

12. Bankruptcy courts in the First Circuit have adopted the "sound business judgment rule" by which the same deference is given to a decision to reject a contract as is given to other business management actions or decisions. See In re Logical Software, Inc., 66 B.R. 683, 686 (Bankr. D. Mass. 1986) *citing* Lubrizol Enterprises, Inc. v. Richmond Metal Finishers, Inc., 756 F.2d 1043, 1046-47 (4th Cir. 1985). Thus, whether an executory contract is favorable or unfavorable is left to the sound business judgment of the debtor to which courts should generally defer. In fact, when hearing a motion to assume or reject an executory contract "the only issue properly before the court is whether assumption or rejection of the subject contract is based upon a debtor's business judgment. In re BankVest Capital Corp., 290 B.R. 443, 447 (B.A.P. 1st Cir. 2003).

---

[3] A public auction was not held on May 28, 2008, as there were no qualified overbids submitted in accordance with

13. In their sound business judgment, the Debtors have determined that it is in the best interest of their bankruptcy estates and creditors to reject the License Agreement. With Angio and Endolaser unable to resolve the issues raised by Endolaser in their Objection, there is no reasonable basis upon which assumption of the License Agreement can be justified given the significant cost of cure and Angio's refusal to pay ongoing royalties to Endolaser. The License Agreement is not necessary or cost effective to the continued operations of the Debtors' business, particularly in light of the Debtors' intention to sell substantially all operating assets to Angio.

14. Accordingly, the Court should authorize the Debtors to reject the License Agreement in conjunction with the entry of an order approving the sale transaction to Angio. Rejection of the License Agreement will cause the entirety of Endolaser's rights in the '777 Patent to re-vest in Endolaser.

## NOTICE

15. Notice of this Motion has been given to the parties set forth in the Order Establishing Special Service List Pursuant to Federal Rules of Bankruptcy Procedure 2002(i) and 2002(m) (Doc. No. 43). In light of the relief requested herein, the Debtors submit that no further or other notice need be provided.

## NO PRIOR REQUEST

16. No prior request for the relief sought herein has been made to this Court in these bankruptcy cases.

---

the Bidding Procedures Order.

WHEREFORE, the Debtors respectfully request entry of an order substantially in the form attached hereto granting the Debtors authority to reject the License Agreement in conjunction with the entry of an order approving the sale transaction to Angio.

Dated: June 1, 2008

Respectfully submitted,

**CHOATE, HALL & STEWART LLP**

Douglas R. Gooding (BBO # 558976)
(DGooding@choate.com)
Lisa E. Herrington (BBO # 655678)
(LHerrington@choate.com)
Two International Place
Boston, MA 02110
Phone: (617) 248-5000
Fax: (617) 248-4000

-and-

**McGUIREWOODS LLP**

  /s/ Mark E. Freedlander
Mark E. Freedlander
Pa. I.D. #70593
James E. Van Horn
Pa. I.D. #88715
Dominion Tower, 23rd Floor
625 Liberty Avenue
Pittsburgh, PA 15222
Phone: (412) 667-6000
Fax: (412) 667-6050

Co-Counsel to Diomed, Inc. and
Diomed Holdings, Inc.

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MASSACHUSETTS
# (WESTERN DIVISION)

| | |
|---|---|
| IN RE:<br><br>DIOMED, INC., *et. al.*,<br><br>　　　　　　　　　　Debtors. | Chapter 11<br><br>Case No. 08-40749 (JBR)<br>(Jointly Administered) |

### ORDER GRANTING DEBTORS AUTHORITY TO REJECT ENDOLASER LICENSE AGREEMENT PURSUANT TO SECTION 365(a) OF THE BANKRUPTCY CODE

Upon the Motion[4] of Diomed Holdings, Inc. ("Holdings") and Diomed, Inc. ("Inc.", collectively with Holdings, the "Debtors'), pursuant to 11 U.S.C. § 365(a), for entry of an Order authorizing the Debtors to reject the Endolaser License Agreement, the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided, and it appearing that no other or further notice need be provided; and the relief requested in the Motion being in the best interests of the Debtors and their estates and creditors; and the Court having reviewed the Motion and having heard the statements in support of the relief requested in the Motion at a hearing before the Court (the "Hearing); and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein, it is hereby:

---

[4] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Debtors' Motion for Authority to Reject Endolaser License Agreement pursuant to Section 365(a) of the Bankruptcy Code.

ORDERED that pursuant to section 365(a) of the Bankruptcy Code, the Debtors are authorized to reject the License Agreement in conjunction with the entry of an order approving the sale transaction to Angio, and such rejection is hereby approved.

Dated: _____, 2008          BY THE COURT:


_____
United States Bankruptcy Judge