IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DIOMED, INC.,<br><br>      Plaintiff,<br><br>v.<br><br>NEW STAR LASERS, INC.<br>d/b/a COOLTOUCH INC.<br><br><br>      Defendant. | Civil Action No. 04-cv-12157-NMG |

**DIOMED'S OPPOSITION TO ENDOLASER'S MOTION TO DISMISS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

I.    BACKGROUND ........................................................................................................2

      A.    Diomed's Purchase of Dr. Min's Rights in the '777 Patent ...................................2

      B.    Diomed's Acquisition of the Remaining '777 Patent Rights from Endolaser.........2

      C.    Diomed's Enforcement of the '777 Patent.............................................................3

            1.    Judge Stearns' Decision that Diomed Held
                  All Substantial Rights in the '777 Patent......................................................3

            2.    The Successful Litigations Against AngioDynamics and VSI ....................4

            3.    Endolaser's Active Participation in the '777 Patent Litigations ..................4

      D.    Diomed's Bankruptcy ...........................................................................................5

      E.    Endolaser's Financial Dispute with Diomed .........................................................5

II.   ARGUMENT................................................................................................................6

      A.    Diomed Alone Has the Right to Recover for Infringement that Occurred
            During the Almost Five Years that the Agreement Was In Force ..........................7

      B.    As a Matter of Law, Diomed has Standing to Complete this Unfinished Case.......8

      C.    None of the Prudential Considerations Cited by Endolaser Apply Here...............11

            1.    Endolaser Had No Right to Grant Licenses
                  During the Relevant Period.........................................................................12

            2.    Endolaser Entrusted the Defense of the '777 Patent's Validity
                  to Diomed and can Participate in Defending Future Challenges
                  if it Desires.................................................................................................12

            3.    There is No Risk of Multiple Suits ............................................................13

      D.    If Necessary, Endolaser Could Be Joined as an Involuntary Plaintiff...................14

III.  CONCLUSION............................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

Amgen, Inc. v. Ariad Pharms., Inc.,
 513 F. Supp. 2d 34 (D. Del. 2007)..........................................................................11

Becker v. Federal Election Comm'n,
 230 F.3d 381 (1st Cir. 2000)..................................................................................10

Dana v. E.S. Originals, Inc.,
 342 F.3d 1320 (Fed. Cir. 2003).........................................................................9, 13

Dean v. Mason,
 61 U.S. 198 (1857)...................................................................................................9

Diomed, Inc. v. AngioDynamics, Inc.,
 450 F. Supp. 2d 130 (D. Mass. 2006) ...............................................................4, 13

Ethicon, Inc. v. U.S. Surgical Corp.,
 135 F.3d 1456 (Fed. Cir. 1998)..................................................................6, 14, 15

Goldhaft v. Moorhouse,
 306 F. Supp. 533 (D. Minn. 1969).........................................................................15

Herman v. Detroit Shipbuilding Co.,
 295 F. 423 (E.D. Mich. 1924).................................................................................9

Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.,
 248 F.3d 1333 (Fed. Cir. 2001)..........................................................................8, 10

IpVenture, Inc. v. Prostar Computer, Inc.,
 503 F.3d 1324 (Fed. Cir. 2007).............................................................................14

Keg Techs., Inc. v. Laimer,
 436 F. Supp. 2d 1364 (N.D. Ga. 2006) ......................................................10, 11, 14

Mas-Hamilton Group v. LaGard, Inc.,
 156 F.3d 1206 (Fed. Cir. 1998)...............................................................................7

Nomos Corp. v. ZMED, Inc.
 175 F. Supp. 2d 96 (D. Mass. 2001) ......................................................................8

Pandrol USA, LP v. Airboss Ry. Prods.,
 320 F.3d 1354 (Fed. Cir. 2003).............................................................................10

Schreiber Foods, Inc. v. Beatrice Cheese, Inc.
 402 F.3d 1198 (Fed. Cir. 2005).............................................................................11

Sir Speedy, Inc. v. Morse,
　　256 B.R. 657 (D. Mass. 2000) ..........................................................................1, 7

Thompkins v. Lil' Joe Records, Inc.,
　　476 F.3d 1294 (11th Cir. 2007) .............................................................................7

Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.p.A.,
　　944 F.2d 870 (Fed. Cir. 1991)...................................................................3, 6, 8, 13

Water Techs. Corp. v. Calco, Ltd.,
　　576 F. Supp. 767 (N.D. Ill. 1983) ..............................................................8, 10, 15

Willingham v. Star Cutter Co.,
　　555 F.2d 1340 (6th Cir. 1977) .........................................................11, 12, 13, 14

Windsurfing Int'l, Inc. v. Ostermann,
　　100 F.R.D. 82 (S.D.N.Y. 1983) ............................................................................13

## **Other**

Annotated Patent Digest (Matthews) § 9.46............................................................1, 9, 12

3 Collier on Bankruptcy § 365.09...................................................................................7

8 Donald S. Chisum, Chisum on Patents § 21.03 [2][a].....................................................9

8 Donald S. Chisum, Chisum on Patents § 21.03 [2][g][i] .................................................7

6 Moore's Federal Practice § 24.22[4] (3d ed. 2008).......................................................13

Endolaser's motion to dismiss is based on the false premise that Diomed's June 2008 bankruptcy-related rejection of its July 2003 License Agreement with Endolaser (the "Agreement") somehow erased the exclusive rights in the '777 patent that Diomed had held for the previous five years – rights for which Diomed paid Endolaser more than $7 million. Endolaser invites basic legal error. At the time it commenced this action, and for virtually the entire period of infringement by CoolTouch (and the other parties that Diomed sued), Diomed controlled <u>all</u> substantial rights in the '777 patent. Diomed's rejection of the Agreement during bankruptcy proceedings did not make those rights disappear. E.g., <u>Sir Speedy, Inc. v. Morse</u>, 256 B.R. 657, 659 (D. Mass. 2000) (Gorton, J.) ("Rejection does not cause a contract magically to vanish."). Endolaser cannot retroactively regain its interest in the '777 patent for the time period preceding the bankruptcy any more than Diomed can now demand that Endolaser return the $7 million that Diomed paid Endolaser for those rights. The fact that Endolaser has held an interest in the patent <u>for the last few months</u> is irrelevant to Diomed's standing and exclusive right to recover damages for infringement that occurred <u>during the previous five years</u>. "[A]n original patent holder who later assigns his rights in the patent may bring a suit for infringement occurring during his ownership of the patent <u>without joining the subsequent assignee</u>." Annotated Patent Digest (Matthews) § 9.46 (emphasis added).

Given that Diomed alone controlled the '777 patent during the five years when the Agreement was in effect, not one of the "prudential" considerations identified by Endolaser is relevant here. Endolaser had (and still has) no right to grant licenses during the time the Agreement was in force. Similarly, there is no risk of multiple suits because Endolaser has no rights to enforce. Finally, Endolaser entrusted Diomed with the defense of the patent's validity. Having now intervened, moreover, Endolaser is free to participate in that defense if it likes.

The Court may be puzzled as to why Endolaser has intervened and moved to dismiss this case even though it is ultimately in Endolaser's interest (as a creditor of the Diomed bankruptcy estate) to maximize the return from the remaining '777 patent litigations. The answer is simple: Endolaser has decided that it wants substantially more than the share it originally negotiated in the Agreement. Diomed <u>does not dispute</u> that Endolaser is entitled to assert a claim to proceeds from the unfinished patent litigation against CoolTouch.[1] When Diomed refused to give Endolaser <u>more</u> than that to which Endolaser is entitled, Endolaser filed the motion to dismiss. Endolaser apparently hopes to extract unwarranted concessions from Diomed in return for dropping this motion.

**I.    BACKGROUND**

**A.    Diomed's Purchase of Dr. Min's Rights in the '777 Patent**

In July 2003, Diomed purchased the '777 patent rights held by Dr. Robert Min, one of the patent's inventors. Diomed retains those rights to this day. Endolaser does not dispute this.

**B.    Diomed's Acquisition of the Remaining '777 Patent Rights from Endolaser**

Also in July 2003, Diomed reached an Agreement with Endolaser "in order to secure all remaining rights" in the '777 patent. (Novod Decl. Ex. A). Section 2.1 of the Agreement granted Diomed the "exclusive right" to practice the invention and unbridled authority to grant sublicenses. Section 4.6(b) gave Diomed the exclusive right to sue for infringement. Section 4.5 likewise provided that Diomed had the right to "take over the sole defense" of actions alleging that the '777 patent was invalid.

---

[1] The terms of the Agreement provide that Endolaser is entitled to 25% of the proceeds from the litigation after deducting legal expenses. Diomed acknowledges that Endolaser may assert a contract rejection damage claim against Diomed's bankruptcy estate for the same percentage that it would have received if the Agreement were still in force. Diomed however reserves all rights to object to the amount of any damage claim asserted by Endolaser.

2

In return, Diomed paid Endolaser $1.5 million immediately plus ten quarterly payments of $250,000 each. On top of this $4 million lump sum, Diomed also paid Endolaser royalties ranging from 5 to 10% on the sale of lasers and endovenous procedure kits. All told, Diomed paid Endolaser more than $7 million between 2003 and 2008.

The Agreement further entitles Endolaser to 25% of any damages recovered by Diomed from '777 patent infringers, less patent litigation costs. (Agreement §§ 4.6 & 5.7).

### C.    Diomed's Enforcement of the '777 Patent

With the exclusive right to enforce the '777 patent, Diomed initially sued four infringers: AngioDynamics, Vascular Solutions, Inc. ("VSI"), Total Vein Solutions, LLC ("TVS"),[2] and CoolTouch. Following the successful March 2007 trial against AngioDynamics and VSI, Diomed filed a fifth suit against Dornier.

#### 1.    Judge Stearns' Decision that Diomed Held All Substantial Rights in the '777 Patent

Early on in the '777 patent litigation, AngioDynamics unsuccessfully attempted to bring Endolaser into the case as a "necessary" party. Judge Stearns rejected AngioDyanmics' motion, holding that the Agreement "transfers all of Endolaser's substantial rights in the patent to Diomed." (Ex. 1). Therefore, Diomed was a "successor in title" to Endolaser, (id. at 2) (quoting Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.p.A., 944 F.2d 870, 875-76 (Fed. Cir. 1991), and Endolaser was not a necessary party.

---

[2] Endolaser criticizes Diomed for not noting the anticipated rejection of the Endolaser Agreement in its June 10, 2008 Amended Complaint in the TVS case. (Br. at 4). But there would have been no reason to do so. As detailed herein, the rejection (which did not occur until later) left Diomed free to resolve the pending litigations and was accordingly irrelevant to the TVS Amended Complaint. Moreover, June 10 was simply when Diomed filed the Amended Complaint that the Court had approved in its June 8, 2008 order. (Civil Action No. 04-CV-10686, D.I. 84). Diomed prepared the Amended Complaint when it sought leave in February – before Diomed had even filed for bankruptcy. (04-CV-10686, D.I. 74 Ex. A).

3

  **2.  The Successful Litigations Against AngioDynamics and VSI**

  Following Judge Stearns' decision that Endolaser was not a necessary party, Diomed successfully litigated its infringement claims against AngioDynamics and VSI. In August 2006, this Court granted Diomed's motion for summary judgment on the defendants' invalidity defenses. Diomed, Inc. v. AngioDynamics, Inc., 450 F. Supp. 2d 130, 138-45 (D. Mass. 2006). The Court analyzed eight alleged prior art references and found all of them lacking. Not one of the references suggested the use of a bare-tip laser fiber in contact with the vein wall. Id. at 145.

  Following a two-week jury trial in March 2007 on the issues of infringement and damages, the jury found AngioDynamics and VSI liable for contributory infringement and inducing infringement, and awarded Diomed more than $12 million in damages. The defendants appealed the decision, and Diomed ultimately settled with them for a total of $10.586 million while the appeal was pending.

  **3.  Endolaser's Active Participation in the '777 Patent Litigations**

  Endolaser principal Dr. Luis Navarro played an active role in Diomed's successful litigation against AngioDynamics and VSI. He was deposed numerous times and provided lengthy trial testimony. Dr. Carlos Bone Salat, another Endolaser principal, was also deposed.

  Dr. Navarro and Endolaser closely monitored the status of all the '777 patent litigations.[3] At no point during this four-year process did Dr. Navarro, Dr. Bone Salat, or any other member of Endolaser voice concern about Diomed's prosecution of these cases. Indeed, given the results that Diomed had achieved, it is not surprising that Endolaser was more than satisfied with Diomed's performance.

---

[3] Indeed, Dr. Navarro prepared and submitted declarations to the Court, for example in connection with Diomed's motion for a preliminary injunction against TVS.

4

### D.     Diomed's Bankruptcy

Ultimately, circumstances beyond Diomed's control required it to file a Chapter 11 bankruptcy petition with the Bankruptcy Court in this district. (Case No. 08-40749). As part of the bankruptcy proceedings, Diomed sold off substantially all its operating assets. Accordingly, Diomed is no longer an operating business. As it winds down its bankruptcy proceedings, Diomed is striving to maximize the return on its remaining assets – principally its unfinished patent litigations against CoolTouch, TVS and Dornier – so that it can distribute the proceeds to creditors.

### E.     Endolaser's Financial Dispute With Diomed

Unfortunately, however, Endolaser has complicated these efforts by attempting to cut to the front of the line. Specifically, Endolaser is trying to recast various unsecured claims that it has against Diomed as purported "administrative claims" to be paid 100 cents on the dollar. One such motion requesting more than $2 million off the top of Diomed's remaining assets (in addition to the more than $7 million that Endolaser already received from Diomed) is currently pending before the Bankruptcy Court.

Similarly, Endolaser is no longer content to assert the 25% share of the unfinished '777 patent litigations that it negotiated in its Agreement with Diomed. Instead, Endolaser is demanding substantially more and seeks to use this legally baseless motion as a lever to take more than its fair share from the Diomed bankruptcy estate, at the expense of Diomed and its other creditors.

## II.     ARGUMENT

Having signed an Agreement that gave Diomed all substantial rights in the '777 patent and the exclusive right to sue CoolTouch and other infringers, Endolaser cannot now undermine those suits (which it previously endorsed) on the ground that it no longer wants Diomed to pursue them.[4]  E.g., Vaupel, 944 F.2d at 875-76 (affirming that plaintiff had standing even though the original patent owner was not a party: "The agreements…transferred the right to sue for infringement.").  The fact that Diomed eventually rejected the Agreement in the course of bankruptcy proceedings does not erase the previous five years during which Diomed controlled all substantial rights in the patent and in return paid Endolaser more than $7 million.

Not one of the cases cited by Endolaser addresses the situation at hand – in which one party retains the right to recover for infringement occurring during a particular period of time, while another party gains an interest in the patent for a subsequent period.  For example, the Federal Circuit's Ethicon decision involved a fundamentally different scenario in which a previously unknown co-inventor had intervened and established that he had contributed to the patented invention.  135 F.3d 1456, 1465 (Fed. Cir. 1998).  As a co-inventor, the intervenor had actually held substantial rights in the patent at all times.  Id. ("[E]ach co-inventor presumptively owns a pro rata undivided interest in the entire patent…").  Moreover, the intervenor had never entered into an agreement with the other owner granting it the exclusive right to pursue litigation.  Here, by contrast, almost five years elapsed during which Diomed alone had substantial rights in the '777 patent and the sole authority (granted by Endolaser in the Agreement) to sue infringers.

---

[4] Whether or not Diomed could "bring" a new suit on its own today (Br. at 11) is an entirely separate question from whether Diomed can maintain cases that Endolaser has already endorsed and which are necessary to recover damages for infringement that occurred when Diomed alone controlled all rights in the patent.

6

### A.     Diomed Alone Has the Right to Recover for Infringement that Occurred During the Almost Five Years that the Agreement Was In Force.

Endolaser's motion to dismiss is fatally flawed because Diomed (1) held all substantial rights in the '777 patent during the almost five years that the Agreement was in force, (2) never transferred them during that period, and therefore (3) has the exclusive right to recover damages for acts of infringement that occurred during that time.

Endolaser is apparently trying to argue that Diomed's rights during those five years somehow evaporated as a result of Diomed rejecting the Agreement in June 2008 and Endolaser therefore regaining an interest in the patent.  This is a fundamental misunderstanding of law. Rejecting a contract in bankruptcy does not retroactively erase it.  E.g., Thompkins v. Lil' Joe Records, Inc., 476 F.3d 1294, 1306 (11th Cir. 2007) ("Rejection…does not make the contract disappear."); Sir Speedy, 256 B.R. at 659 ("Rejection does not cause a contract magically to vanish."); 3 Collier on Bankruptcy § 365.09 ("Rejection does not…affect the parties' substantive rights under the contract….").   The fact that Diomed and Endolaser have shared interests in the patent for the past few months is immaterial to Diomed's right to recover for infringement that occurred during the preceding five years.

It is well-settled that "only the holder of legal title to a patent at the time of the infringement can bring an action for damages resulting from that infringement." Mas-Hamilton Group v. LaGard, Inc., 156 F.3d 1206, 1210 (Fed. Cir. 1998).  See also 8 Donald S. Chisum, Chisum on Patents § 21.03[2][g][i] ("The right to sue for damages for infringement rests in the person who held the appropriate ownership interest in the patent at the time the infringing acts occurred….If ownership of the patent is transferred, the transferor retains the right to sue for pretransfer infringements unless that right is expressly included in the transfer.").

7

Here, Judge Stearns has already concluded that the Agreement left Endolaser with no substantial rights in the '777 patent. (Ex. 1). In other words, the transaction between Diomed and Endolaser was in substance an assignment. Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc., 248 F.3d 1333, 1345 (Fed. Cir. 2001) ("A grant of all substantial rights in a patent amounts to an assignment – that is, a transfer of title in the patent."); Vaupel, 944 F.2d at 874 ("[A] transfer will suffice as a sale if it appears from the agreement and surrounding circumstances that the parties intended that the patentee surrender all his substantial rights to the invention."); Nomos Corp. v. ZMED, Inc., 175 F. Supp. 2d 96, 98 (D. Mass. 2001) (denying motion to dismiss).

The Bankruptcy Court confirmed the same by approving Diomed's rejection of the Agreement subject to an order requiring the parties to take steps "to re-vest in, and return, Endolaser's undivided interest in the '777 patent." (Novod Decl. Ex. F ¶ 5) (emphasis added).

As a matter of law, therefore, Diomed retains the exclusive right to pursue infringers for sales that occurred during the five years before rejection of the Agreement. Water Techs. Corp. v. Calco, Ltd., 576 F. Supp. 767, 773 (N.D. Ill. 1983) ("[A]ny injury sustained by [plaintiff] due to [defendant's] infringement would not be corrected by the mere termination of [plaintiff's] licensee status. An exclusive licensee may bring suit for damages in his own name after the license has terminated for infringements committed during the pendency of the license.").

**B.     As a Matter of Law, Diomed Has Standing to Complete this Unfinished Case.**

The fact that Endolaser now has an interest in the '777 patent is immaterial to Diomed's standing to recover damages from CoolTouch for the five years of infringement that occurred while Diomed controlled all substantial rights. (Diomed's eventual rejection of the Agreement at most affects the amount of damages that it can recover from CoolTouch after the rejection.)

8

In Dana v. E.S. Originals, Inc., 342 F.3d 1320 (Fed. Cir. 2003), for example, the plaintiff Alfred Dana had owned the patent-in-suit until August 1993, when he assigned it to a third party, LA Gear. LA Gear had earlier filed suit against several defendants for alleged infringers after the 1993 transfer. In Mr. Dana's subsequent suit, he sought estop those defendants from contesting infringement and invalidity issues that had been addressed in LA Gear's earlier suit. The Federal Circuit's opinion does not even suggest the possibility of a standing problem even though the current owner of the patent (LA Gear) was not involved in Mr. Dana's suit for infringement that had occurred during the time that he owned the patent. Id. at 1321-22.

Other authority on this point is legion. E.g., Annotated Patent Digest (Matthews) § 9.46 ("[A]n original patent holder who later assigns his rights in the patent may bring a suit for infringement occurring during his ownership of the patent without joining the subsequent assignee."); Dean v. Mason, 61 U.S. 198, 204 (1857) (affirming denial of motion to dismiss; the plaintiff had assigned its patent rights to another, but was seeking to recover for infringing acts that occurred before the assignment); Herman v. Detroit Shipbuilding Co., 295 F. 423, 424-25 (E.D. Mich. 1924) (denying motion to dismiss for failure to join patent assignee: "[O]ne who owns a patent and has the right to recover for infringement thereof at the time of its infringement, and who does not afterwards assign to an another person such right, together with the patent to which it is incident, is entitled, and is the only person entitled, to recover the damages and profits arising from such infringement, even though, after the infringement, he assigns all of his right, title, and interest in such patent…."). Cf. Chisum § 21.03[2][a] ("A patent owner who conveys all interests in a patent generally has no standing to sue as to infringements occurring after the date of the transfer.") (emphasis added) (implying, as the above authorities hold, that he has standing for prior infringements, which is the issue here).

9

Endolaser's suggestion (Br. at 11) that Diomed has "lost" its standing to hold CoolTouch accountable for five years of infringement occurring before rejection of the Agreement turns on the false assumption that Diomed no longer maintains a "personal stake" in the case or otherwise satisfies Article III's "case-or-controversy" requirement. This is wrong for two separate reasons.

First, Diomed has a personal stake in the outcome of the litigation because it centers on CoolTouch's infringement during five years when Diomed alone controlled all substantial rights in the patent. CoolTouch's infringement caused millions of dollars of harm to Diomed during those five years. Endolaser's acquisition of rights covering a subsequent few months cannot moot Diomed's damages claim covering the earlier period. Water Techs., 576 F. Supp. at 773. Indeed, "standing" per se need only have existed at the case's outset. Becker v. Federal Election Comm'n, 230 F.3d 381, 386 n.3 (1st Cir. 2000) ("[A] plaintiff must have a personal interest at stake throughout the litigation of a case, [but] such interest is to be assessed under the rubric of standing at the commencement of the case, and under the rubric of mootness thereafter.").

Furthermore, Diomed undisputedly maintains an ownership interest in the '777 patent and therefore continues to suffer harm whenever CoolTouch sells infringing products. See Pandrol USA, LP v. Airboss Ry. Prods., 320 F.3d 1354, 1368 (Fed. Cir. 2003) ("Establishing ownership of a patent that has been infringed satisfies the requirements of Article III standing."); Intellectual Prop. Dev., 248 F.3d at 1346 ("A party…that has the right to exclude others from making, using, and selling an invention described in the claims of a patent is constitutionally injured by another entity that makes, uses, or sells the invention."); Keg Techs., Inc. v. Laimer, 436 F. Supp. 2d 1364, 1368 (N.D. Ga. 2006) ("The Court, while agreeing with Defendants that non-joinder of a co-owner presented a prudential standing issue, declined to dismiss Plaintiffs' patent claims on this ground.") (emphasis added).

The Schreiber decision on which Endolaser relies (Br. at 11) is not to the contrary. As the Federal Circuit recognized in that case, "a plaintiff must have initial standing and continue to have a personal stake in the outcome of the lawsuit" throughout its pendency. 402 F.3d 1198, 1203 (Fed. Cir. 2005). Diomed's suit against CoolTouch satisfies both these requirements. At the time that it brought the lawsuit, Diomed undisputedly satisfied both the letter and the spirit of the constitutional and prudential standing requirements. Furthermore, Diomed continues to have a personal stake in the outcome of the litigation to this day because (1) Diomed alone retains the right to pursue CoolTouch for infringement occurring before rejection of the Agreement and (2) Diomed still holds the patent rights that it acquired from Dr. Min. In Schreiber, by contrast, the original patent owner had transferred not just its patent rights, but also the right to sue for past infringement. Id. at 1202. Critically, no such transfer of prior-accruing claims occurred here.

        **C.**        **None of the Prudential Considerations Cited by Endolaser Apply Here.**

Ignoring that (1) the Agreement gives Diomed the exclusive right to pursue CoolTouch for infringement occurring before the rejection and (2) Diomed indeed controlled all substantial rights in the '777 patent for an almost five-year period of time while Endolaser acknowledged Diomed's right to pursue litigation, Endolaser cites (Br. at 9-10) the Sixth Circuit's Willingham decision and a series of policy considerations that have no bearing under present circumstances. Endolaser also wrongly assumes that failure to join a co-owner automatically leads to dismissal. E.g., Amgen, Inc. v. Ariad Pharms., Inc., 513 F. Supp. 2d 34, 43 (D. Del. 2007) ("Rule 19 makes inappropriate any contention that patent co-owners are *per se* indispensable in infringement suits."); Keg Techs., 436 F. Supp. 2d at 1369 ("The Court, while agreeing with Defendants that non-joinder of a co-owner presented a prudential standing issue, declined to dismiss Plaintiffs' patent claims on this ground.").

11

1.      **Endolaser Had No Right to Grant Licenses During the Relevant Period.**

The first consideration identified in Willingham – "the interest of a co-owner in being able to license third parties under his or her patent without harassing suits by other co-owners" is immaterial under the circumstances given that the vast majority of CoolTouch's infringement occurred when the Agreement was in effect. Section 2.1 gave Diomed the exclusive right to sub-license the '777 patent. Indeed, Judge Stearns determined that the Agreement conveyed all substantial rights to Diomed. (Ex. 1). In other words, for the period of time the Agreement was operable, Endolaser could not have licensed CoolTouch even if it wanted to.[5]

2.      **Endolaser Entrusted the Defense of the '777 Patent's Validity to Diomed And Can Participate in Defending Future Challenges If It Desires.**

Endolaser fares no better with the second Willingham factor – a co-owner's interest "in avoiding the estoppel effect of a judgment declaring the patent invalid in which he or she did not participate."

Endolaser entered into the Agreement giving Diomed the exclusive right to sue competitors for infringements occurring while the Agreement was in force. By doing so, Endolaser entrusted to Diomed the task of defending the '777 patent's validity and implicitly acknowledged that Diomed's defense would be sufficient. See Annotated Patent Digest (Matthews) § 9.46 ("[A]n original patent holder who later assigns his rights in the patent may bring a suit for infringement occurring during his ownership of the patent without joining the subsequent assignee. In such a situation, the assignee bears the risk that the patent may be declared invalid during the course of the infringement action without having the ability to participate in the proceeding.").

---

[5] The short time after Diomed's rejection of the Agreement is irrelevant. What Diomed can recover during that period is irrelevant to Diomed's standing in the earlier period.

12

Moreover, Diomed has handled its responsibility as well as Endolaser could possibly have hoped. Diomed secured summary judgment of patent validity in the hotly contested AngioDynamics and VSI litigation. Diomed, 450 F. Supp. 2d at 138-45.

In any event, Endolaser has now intervened in the instant litigation and therefore will see – and indeed will be entitled to rebut – any invalidity theories that CoolTouch articulates. E.g., Windsurfing Int'l, Inc. v. Ostermann, 100 F.R.D. 82, 84 (S.D.N.Y. 1983) (denying motion to stay filed by alleged co-owner of patent, citing the prospect of "formal notification to [the alleged co-owner] of the pendency of this litigation, and an invitation to him by the Court to join as a plaintiff…and to waive any objections as to personal jurisdiction"). Unlike in Windsurfing, there is no need for this Court to extend an invitation or take any other action to ensure that Endolaser's interests are protected. Endolaser has already joined the case and thereby waived any objections to personal jurisdiction. See 6 Moore's Federal Practice § 24.22[4] (3d ed. 2008) ("An intervenor ordinarily consents to the personal jurisdiction of the court by the act of intervening.").

### 3. **There is No Risk of Multiple Suits.**

The final interest identified in Willingham – avoiding multiple suits concerning infringement of the same patent – is not controlling in cases involving transfers of patent rights from one party to another. As the Federal Circuit's Dana decision illustrates, there are situations in which infringers face one suit from the original patent owner and a separate suit from a later owner (e.g., for later infringement). Dana, 342 F.3d at 1321-22. The real concern – the possibility of multiple suits for the same infringement – is not an issue here, as the Agreement gave Diomed the exclusive right to sue. See Vaupel, 944 F.2d at 875-76 ("This policy is not undercut here because the right to sue rested solely with Vaupel.").

13

In any event, CoolTouch will not face <u>any</u> subsequent suit concerning the '777 patent provided that this Court allows Diomed to maintain this one. As detailed above, Diomed alone has the right to sue CoolTouch for infringement that occurred while the Agreement was in force. It would be a tremendous waste of resources to litigate five years of infringement in one case and then bring a separate suit regarding a subsequent few months. Diomed accordingly represents that, assuming the Court denies the instant motion to dismiss, under no realistic[6] circumstances would Diomed ever join a subsequent suit against CoolTouch that Endolaser attempts to bring. By Endolaser's own admissions, therefore, it would be unable to bring such a case. <u>See</u> <u>Keg Techs.</u>, 436 F. Supp. 2d at 1368 (where a declaration "assuag[ed] concerns about multiple suits," the "Court, while agreeing with Defendants that non-joinder of a co-owner presented a prudential standing issue, declined to dismiss Plaintiffs' patent claims on this ground.").

**D.     <u>If Necessary, Endolaser Could Be Joined as an Involuntary Plaintiff</u>.**

Even if the prudential considerations noted in <u>Willingham</u> were relevant here (which they are not for the reasons described above), the appropriate resolution would be involuntary joinder of Endolaser as a party, much as in <u>Willingham</u> itself. 555 F.2d 1340, 1346 (6th Cir. 1977).

Diomed held an exclusive license from Endolaser for almost five years. As a matter of law, an exclusive licensee is entitled to join the licensor as a plaintiff. <u>E.g.</u>, <u>Ethicon</u>, 135 F.3d at 1468 n.9;[7] <u>IpVenture, Inc. v. Prostar Computer, Inc.</u>, 503 F.3d 1324, 1325 (Fed. Cir. 2007) (all entities with an independent right to enforce the patent "may be joined involuntarily" to assure that "all interested parties are before the court and that their interests are considered").

---

[6] The only proviso is that a subsequent suit theoretically might be necessary to pursue infringement that occurs after a <u>judgment</u> in the present one. Presumably, however, an injunction would enter and no such action would be necessary.

[7] By contrast, there was no license or other agreement between the co-owners in <u>Ethicon</u> itself.

14

Diomed is therefore able (if deemed necessary by the Court) to join Endolaser as an involuntary co-plaintiff in order to recover damages for infringement that occurred when the Agreement was in effect.  This result is more than fair – Endolaser received more than $7 million from Diomed while knowing full well that it "must permit [Diomed] to sue in [Endolaser's] name" if necessary in order for Diomed to recover damages for infringement.  Ethicon, 135 F.3d at 1468 n.9; see also Water Techs., 576 F. Supp. at 773 ("An exclusive licensee may bring suit for damages in his own name after the license has terminated for infringements committed during the pendency of the license.")

Indeed, an exclusive licensee retains the right to make the patent owner an involuntary plaintiff even after the exclusive license is no longer in effect. Goldhaft v. Moorhouse, 306 F. Supp. 533, 536 (D. Minn. 1969) ("[O]nce the patent owner has created an exclusive license he is taking that risk within the limitations of the exclusive license that the licensee may have a claim covering the period during which he had that status, and the owner may thus indirectly be called upon to defend the validity of the patent.").

## IV.   CONCLUSION

For the above reasons, Endolaser's motion to dismiss for lack of subject matter jurisdiction and failure to state a claim should be dismissed.

|  |  |
|---|---|
|  | DIOMED, INC., |
|  | By its attorneys, |
| Dated: September 5, 2008 | /s/ Michael A. Albert |
|  | Michael A. Albert (BBO #558566) |
|  | malbert@wolfgreenfield.com |
|  | Michael N. Rader (BBO #646990) |
|  | mrader@wolfgreenfield.com |
|  | Charles T. Steenburg (BBO #663314) |
|  | csteenburg@wolfgreenfield.com |
|  | WOLF, GREENFIELD & SACKS, P.C. |
|  | 600 Atlantic Avenue |
|  | Boston, MA 02210 |
|  | (617) 646-8000 |

**CERTIFICATE OF SERVICE**

I certify that this document is being filed through the Court's electronic filing system, which serves counsel for other parties who are registered participants as identified on the Notice of Electronic Filing (NEF). Any counsel for other parties who are not registered participants are being served by first class mail on the date of electronic filing.

/s/ Michael A. Albert